OWEN FRANK, APPELLEE, V. TERRY CARPENTER ET AL., APPELLANTS.

289 N. W. 538

FILED DECEMBER 23, 1939. No. 30844.

*Frank L. Glebe, Willard F. McGriff* and *Mothersead & York*, for appellants.

*Floyd E. Wright, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, MESSMORE and JOHNSEN, JJ.

JOHNSEN, J.

This case challenges the validity of the tax scavenger proceedings discussed in *Marker v. Scotts Bluff County*, p. 360, *post*, 289 N. W. 534, with respect to another piece of real estate. Most of the questions raised are settled by that decision.

Plaintiff sued defendant Carpenter for specific performance of a contract to purchase the property involved. Car-

penter set up as his reason for nonperformance that plaintiff had failed to discharge the tax liens against the property. The taxes involved were principally those for the years 1920 to 1927, inclusive, aggregating approximately $1,500, without accumulated interest. He asked that he be authorized to pay the taxes out of the balance of the purchase price, as far as possible, and that he be given judgment against plaintiff for any additional amount necessary to be advanced by him to discharge the liens. He further asked that Scotts Bluff county be impleaded as a defendant and be required to set up the tax liens against the property on behalf of itself and as trustee for the other interested governmental units. Scotts Bluff county filed a cross-petition alleging that, while the taxes in question had been included in the tax scavenger suit brought by the county attorney in 1928 (which is discussed in the *Marker* case), the proceedings had were void and the taxes were therefore still a lien against the property which it was entitled to have foreclosed. The trial court entered a decree in favor of plaintiff and dismissed the cross-petition of Scotts Bluff county. Defendants have appealed.

In this case the property involved was purchased by plaintiff's father, at the scavenger sale, on May 8, 1929, for the sum of $1, and a tax sale certificate was issued to him. No steps were ever taken to have the sale either vacated or confirmed, except that in November, 1932, the county treasurer, on his own motion and without notice to any of the parties, had the court enter an order authorizing him to cancel the taxes in question on his records, on the ground that they had been duly extinguished by the foreclosure proceedings. The tax sale certificate remained outstanding until March 15, 1939, when it was surrendered by the father to the county treasurer, with a letter stating, "I am sending you this Certificate of Tax Sale for cancelation under 77-2129 of the 1929 Statutes." Section 77-2129 provides that, where a certificate has been returned by the holder and canceled, "such cancelation shall have the effect of a redemption from such tax sale."

The foreclosure and the sale in the scavenger proceedings cannot be attacked in this suit, for the reasons which have been set out in the *Marker* case, unless they are utterly invalid. The county charges that the property was bid in by the father under a collusive agreement with the plaintiff, and that this, together with the nominal amount for which the property was purchased, constituted a direct fraud. Plaintiff and his father testified that there had been no conversation or agreement between them regarding the purchase of the property, although it was shown that plaintiff in turn had bid in some property which was owned by the father. It appears that prior to the sale the father had forwarded a check to the county treasurer with the request that some properties be selected and bids made for him by the county treasurer.

The situation does not have a particularly wholesome aspect, with the father and son, both of whom were delinquent in their taxes, purchasing each other's properties, and with the county treasurer undertaking to place. a bid of $1 in the father's behalf upon a piece of the son's property, against which there existed $1,500 in taxes, without accumulated interest. But, even if the sale could be branded as collusive and fraudulent, it would still not be void, but merely voidable. A dollar has always been held to be a sufficient consideration in the eyes of the law to support a sale. This does not, of course, prevent the court, in scrutinizing a judicial sale, from taking into account the inadequacy of the sale price as one of the factors in determining whether the sale should be vacated or confirmed. But this matter, as well as any matters of conduct which may have tinged the sale, can only be considered by the court in a direct attack upon the sale proceedings. They cannot be raised in a collateral proceeding. In the absence of any attempt on the part of the county to vacate the sale in the scavenger proceedings, in the ten years that have elapsed, we must, for the purposes of this suit, accept it as valid.

It should perhaps be suggested, in connection with tax

scavenger proceedings throughout the state in the future, that the county attorney owes the duty of examining the sales and of taking prompt steps to attempt to vacate any sales where it appears that questionable practices have been indulged in to the probable prejudice of the public. The court will not hesitate to exercise its plenary equitable powers in such a situation. *Prudential Real Estate Co. v. Battelle*, 90 Neb. 549, 134 N. W. 161.

The county raises one other point that requires consideration. It contends that the holder of a tax sale certificate cannot surrender it for cancelation, so as to give it the effect of a redemption, after the expiration of the time limited for the acquiring of title. It argues that the father's failure to take title or to surrender his certificate before this right expired made the certificate a nullity. If the rights of a certificate-holder are to be deemed to have lapsed for all purposes, after the time has expired for acquiring title under the certificate (which we need not determine), the lapse would have to be held to operate primarily in favor of the property owner and not of the government. But whether the rights under the certificate in such a situation might still be enforced as a lien by an independent foreclosure in equity, or whether they have wholly expired, there is nothing in the statute, in either event, that prevents their surrender at any time for the purpose of clearing the public records and of giving "the effect of a redemption from such sale."

We are obliged to affirm the decree of the trial court.

AFFIRMED.